UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TOWNSQUARE MEDIA, INC.,

                Plaintiff,

    v.

REGENCY FURNITURE, INC. *and*
REGENCY MANAGEMENT SERVICES, LLC,

                Defendants.

No. 21-CV-4695 (KMK)

OPINION & ORDER

Appearances:

Jared E. Paioff, Esq.
Schwartz Sladkus Reich Greenberg Atlas LLP
New York, NY
*Counsel for Plaintiff*

Alan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Townsquare Media, Inc. ("Townsquare" or "Plaintiff") brings this Action against Regency Furniture, Inc. ("Regency Furniture") and Regency Management Services, LLC, ("Regency Management"; collectively, "Defendants"), alleging breach of contract and account stated claims against Defendants arising from unpaid contracts for advertising services. (*See* Am. Not. of Removal (Dkt. No. 15), Ex. B ("Compl.") ¶¶ 22–32 (Dkt. No. 15-2).) On September 28, 2022, this Court issued an Opinion & Order denying Defendants' motion for summary judgment in full and granting in part and denying in part Plaintiff's motion for summary judgment. (Dkt. No. 46.) On November 7, 2022, both Parties submitted Motions for

Reconsideration.  (*See* Defs.' Mot. for Reconsideration ("Defs.' Mem.") (Dkt. No. 63); Pl.'s Mot. for Reconsideration ("Pl.'s Mem.") (Dkt. No. 65).)  Defendants submitted their opposition on November 18, 2022.  (Defs.' Mot. in Opp. to Reconsideration ("Defs.' Opp.") (Dkt. No. 66).)  Plaintiff submitted its opposition on November 21, 2022.  (*See* Pl.'s Mot. in Opp. to Reconsideration ("Pl.'s Opp.") (Dkt. No. 67).)  Plaintiff submitted its reply on November 30, 2022.  (*See* Reply Mem. ("Pl.'s Reply") (Dkt. No. 74).)  For the reasons stated below, Plaintiff's Motion is granted in part and denied in part, and Defendants' Motion is denied.

## I.  Discussion

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters."  *Arthur Glick Truck Sales, Inc. v. Stuphen E. Corp*, 965 F. Supp. 2d 402, 404 (S.D.N.Y. 2013) (quotation marks omitted), *aff'd*, 577 F. App'x 11 (2d Cir. 2014).  The standard for such motions is "strict" and "should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543, 2017 WL 3443623, at *1 (S.D.N.Y. Aug. 9, 2017) ("It is well established that the rules permitting motions for reconsideration must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the [c]ourt." (quotation marks omitted)). A movant may not "rely upon facts, issues, or arguments that were previously available but not presented to the court."  *Indergit v. Rite Aid Corp.*, 52 F. Supp. 3d 522, 523 (S.D.N.Y. 2014). Nor is a motion for reconsideration "the proper avenue for the submission of new material."  *Sys. Mgmt. Arts, Inc. v. Avesta Tech., Inc.*, 106 F. Supp. 2d 519, 521 (S.D.N.Y. 2000).  "Rather, to be

entitled to reconsideration, a movant must demonstrate that the [c]ourt overlooked controlling decisions or factual matters that were put before it on the underlying motion, which, had they been considered might reasonably have altered the result reached by the court." *Arthur Glick Truck Sales*, 965 F. Supp. 2d at 405 (quotation marks omitted); *Shrader*, 70 F.3d at 257 (same). In other words, "[a] motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Alvarez v. City of New York*, No. 11-CV-5464, 2017 WL 6033425, at *2 (S.D.N.Y. Dec. 5, 2017) (internal quotation marks omitted) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *see also Indergit*, 52 F. Supp. 3d at 523.

A. Breach of Contract

Defendants make the same argument on reconsideration as they did at summary judgment, namely that the "evidence establishes that Regency Management is simply a paymaster for other companies." (Defs.' Mem. 3.) Defendants' theory—again supported by the fact that no invoices were sent to Regency Management—has already been addressed by this Court. (Opinion & Order 33–38.) Defendants' disagreement with the Court's analysis is not "a basis for reconsideration." *Bryant v. AB Droit Audiovisuels*, No. 07-CV-6395, 2017 WL 2954764, at *2 (S.D.N.Y. July 11, 2017); *see also Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co.*, No. 08-CV-10518, 2011 WL 1347001, at *2 (S.D.N.Y. Apr. 4, 2011) ("The Court will not re-litigate the merits of the underlying dispute on a motion for reconsideration."), *aff'd*, 495 F. App'x 129 (2d Cir. 2012)). "Because [Defendants] present no new factual information or law that requires a different outcome in the underlying motion, reconsideration is

inappropriate." *Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.*, No. 03-CV-5429, 2008 WL 4525400, at *4 (S.D.N.Y. Oct. 6, 2008) (citation omitted).

However, the Court does agree with Plaintiff that the Court inadvertently overlooked evidence in the record in concluding that the January 2021 Digital contract was not proven to exist. (Pl.'s Mem. 7.)  The January 2021 Digital contract and invoices were included in Plaintiff's exhibits to its motion for summary judgment. (*See* Dkt. Nos. 39-33 at 9, 29–31; 39-11 at 58–59.)  Indeed, this Court, in other portions of its Opinion & Order, explicitly noted the existence of the January 2021 Digital contract for $32,500. (*See* Opinion & Order at 6 ("On December 16, 2020, Kelly emailed with Lang and Campbell regarding the 'January 2021 total budget for Townsquare' to be spent on digital advertising, setting it at $32,500.") (citing Dkt. No. 39-33, at 29–31); Opinion & Order at 23 (determining that the "mid-December 2020 email exchange regarding $32,500 in digital advertising for January 2021" gave rise to a contract) (citing Dkt. No. 39-33, at 29–31).)  The January 2021 Digital contract amount of $32,500 matches the dollar amount on the corresponding invoice that Plaintiff is seeking on this contract. (*Compare* Dkt. No. 39-33 at 29–31 *with* Northridge Aff. (Dkt. No. 39-2) ¶ 3, Dkt. No. 39-33, at 9 *and* Dkt. No. 39-11, at 58–59.)  In line with this Court's reasoning and analysis in the Opinion & Order, namely its granting Plaintiff both liability and damages for the February 2021 Broadcasting and March 2021 Digital contracts, "contracts in which the outstanding invoices match[] . . . [because] Plaintiff undoubtedly provided a reasonable estimate of the damages incurred as a result of the breach," had the Court properly considered the evidence before it of the January 2021 Digital contract, it would have arrived at the same conclusion. (Opinion & Order at 30.)  Accordingly, the portion of the Opinion & Order denying Plaintiff summary judgment on the January 2021 Digital contract was an error of a "factual matter[] presented to

4

the Court in the underlying motion and overlooked," and the Court grants Plaintiff summary judgment on both liability and damages—in the amount of $32,500—on the January 2021 Digital contract.  *See Bueno v. Gill*, 237 F. Supp. 2d 447, 449 (S.D.N.Y. 2002).

Next, for the April 2021 Broadcast, May 2021 Broadcast, December 2019 Digital, January 2020 Digital, February 2020 Digital, March 2020 Digital, and May 2021 Digital contracts, which the Court granted Plaintiff summary judgment on liability but denied as to damages, Plaintiff argues that the "Court erred in declining to award damages simply because the amounts in the contracts did not match to the dollar amount the Plaintiff is *currently* seeking pursuant to those contracts."  (Pl.'s Mem. 8.)  In denying summary judgment as to damages on these seven contracts, this Court noted that that the discrepancies between Plaintiff's requested damages and the contracted amount ranged from several hundred dollars to tens of thousands of dollars and that, critically, "Plaintiff fails to explain the nature of these discrepancies."  (Opinion & Order at 32.)  Plaintiff states that the "deviations between contract amounts and amounts currently sought are easily explainable as to each of the seven contracts" and now provides the Court with an accounting for these discrepancies:

> April 2021 Broadcast: The contract amount for April 2021 broadcast was $25,500. The amount Plaintiff is currently seeking is $24,225. The difference of $1,275 is the result of a campaign for $5,525 called "Spring Savings" that ran from March 31, 2021 to April 4, 2021. Because it overlapped March and April, it was invoiced in April. Along the same lines, $6,800 of the budget for April 2021 was invoiced in May 2021 because of another campaign called "Big Deal" that overlapped the next two months, April and May – this one ran from April 28, 2021 through May 2, 2021. This campaign was invoiced in May 2021 and accordingly was subtracted from the total. (i.e., $25,500 + $5,525 - $6800).

> May 2021 Broadcast: The contract amount for May 2021 Broadcast was $19,550. The amount Plaintiff is currently seeking is $6,800. The only invoice for May 2021 is $6,800 for the "Big Deal" campaign from the prior month's budget that ran from April 28 through May 2, 2021. After that campaign was completed, Plaintiff stopped providing services to defendant as a result of defendants' refusal to pay the outstanding invoices.

> December 2019 Digital: The contract amount for December 2019 Digital was $162,000. The amount Plaintiff is currently seeking is $110,900. Defendants made partial payments totaling $45,100 and plaintiff wrote-off $6,000 in charges.
>
> January 2020 Digital: The contract amount for January 2020 Digital was $163,500. The amount Plaintiff is currently seeking is $141,500. Defendants made partial payments totaling $22,000 ($10,000 in September 2020 and $12,000 in December 2020).
>
> February 2020 Digital: The contract amount for February 2020 Digital was $195,000. The amount Plaintiff is currently seeking is $155,000. Defendants made partial payments totaling $40,000 in August 2020.
>
> March 2020 Digital: The contract amount for March 2020 Digital was $195,000. The amount Plaintiff is currently seeking is $152,170. Defendants asked plaintiff to pause campaigns mid-month due to the Covid-19 Pandemic resulting in a non-exhaustion of the budget.
>
> May 2021 Digital: The contract amount for May 2021 Digital was $25,347. The amount Plaintiff is currently seeking is $20,181. During this month, Plaintiff stopped providing services to defendant as a result of defendants' refusal to pay the outstanding invoices.

(Pl.'s Mem. 8–9 (citing Dkt. No. 47-1; Lang Aff. (Dkt No. 39-1) ¶¶ 8, 19, 22–23; Northridge Aff. (Dkt No. 39-2 ¶ 3 n.2)).) However, Plaintiff did not provide the Court with these facts at summary judgment—or at the very least, has not pointed the Court to supporting documentation that it did so.[1] This evidence is certainly not newly available to Plaintiff, as "evidence in a party's possession before a court's ruling is not considered 'newly available' evidence." *First State Ins. Co. v. Ferguson Enterprises, Inc.*, No. 16-CV-1822, 2019 WL 2521838, at *4 (D. Conn. June 18, 2019) (citing *Rodriguez v. British Airways, PLC*, No. 17-CV-03691, 2018 WL 501568 (E.D.N.Y. Jan. 19, 2018) (rejecting reconsideration in part because "what Feuerborn stated, not the transcript of what he stated, is the evidence at issue, and that was obviously

---

[1] The Lang and Northridge Affidavits were provided in Plaintiff's summary judgment briefing, however these affidavits do not contain the calculation details Plaintiff now provides the Court.

6

available to and discovered by the plaintiff at the time of the deposition—before the Court entered judgment"); *see also JLM Couture, Inc. v. Gutman*, No. 20-CV-10575, 2023 WL 3061924, at *2 (S.D.N.Y. Apr. 24, 2023) ("In the context of a motion for reconsideration, new evidence is evidence that existed at the time of the motion, but was unavailable to the movant when the Court made its previous ruling and could not have been found by due diligence." (quotation marks omitted)). Furthermore, Plaintiff's spreadsheets, one embedded in Plaintiff's motion for reconsideration (Pl.'s Mem. 4) and the other attached as an exhibit to Plaintiff's motion for reconsideration (*see* Dkt. No. 65-1), do not point the Court to evidence in the summary judgment record that elucidates Plaintiff's damages calculations.[2] As a movant may not "rely upon facts, issues, or arguments that were previously available but not presented to the court," *Indergit*, 52 F. Supp. 3d at 523, nor is a motion for reconsideration "the proper avenue for the submission of new material," *Sys. Mgmt. Arts, Inc.*, 106 F. Supp. 2d at 521, the Court will not consider the evidence Plaintiff now seeks to introduce to clarify its damages calculations.

Plaintiff additionally argues that summary judgment is warranted in its favor for the January 2021 Broadcast contract, the March 2021 Broadcast contract, and the February 2021 Digital contract. (Pl.'s Mem. 10–12.) While Plaintiff posits that "[e]ach of these contracts were produced in discovery" and now points the Court to exhibits submitted with its letter motion seeking reconsideration, Plaintiff acknowledges it failed to provide copies of the emails evidencing such contracts at summary judgment. (*Id*. at 10–11 (citing Dkt. Nos. 47-2, 47-3, 47-

---

[2] In Exhibit 1, Plaintiff provides the Court with bates numbers, presumably to support its damages calculations, but does not point the Court to specific exhibits or explain whether these bates stamped documents were in the summary judgement record. (*See* Dkt. No. 65-1.) In the spreadsheet embedded in Plaintiff's motion for reconsideration, (Pl.'s Mem. 4), Plaintiff points the Court to exhibit numbers and bates numbers, but these documents do not provide information that was before the Court at summary judgement regarding the calculations themselves, they speak only to the initial contract amounts.

7

4).)  A motion for reconsideration is not "the proper avenue for the submission of new material." *Sys. Mgmt. Arts, Inc.*, 106 F. Supp. 2d at 521.  Plaintiff notes that "[w]hile physical copies of the emails reflecting the January 2021 Broadcast contract, the March 2021 Broadcast contract, and the February 2021 Digital contract were not attached to Plaintiff's motion, they were exchanged in discovery, acknowledged by [D]efendants' witness, and the amounts due under these agreements, as well as evidence supporting their existence, are reflected in [D]efendants' own documentation that was proffered on summary judgment."  (Pl.'s Mem. 10–11.)   Plaintiff points to the fact that it did include invoices for these contracts at summary judgment and that the amounts in those invoices match the amounts on the party's respective aging reports.  (*Id*. at 11.)  However, Plaintiff does not point to any clear error or fact overlooked by this Court, indeed, the Court considered the "invoices and attestations thereto, the general discussion of billing practices . . . and the Defendants' discussion of outstanding debts" noting that such evidence "raises a genuine issue of material fact as to the contract's existence."  (Opinion & Order at 31.)  Plaintiff's disagreement with the Court's analysis is not a basis for reconsideration.  *See Bryant*, 2017 WL 2954764, at *2; *see also Women's Integrated Network, Inc.*, 2011 WL 1347001, at *2 ("The Court will not re-litigate the merits of the underlying dispute on a motion for reconsideration."), *aff'd*, 495 F. App'x 129 (2d Cir. 2012)).

      B.  Accounts Stated

Plaintiff seeks partial reconsideration of this Court's dismissal of its account stated claim. (Pl.'s Mem. 12.)  Specifically, Plaintiff seeks reconsideration of the Court's decision regarding the January 2021 Broadcast, the March 2021 Broadcast, and the February 2021 Digital contracts, because the Court declined to find contractual liability on these three contracts.  (*Id*.)  The Court agrees that reconsideration is warranted.  "While Plaintiff may not ultimately recover the same

damages twice, it may maintain both theories at this stage, where the Court has not yet ruled on the validity of any contract." *Mediterranean Shipping Co. (USA) Inc. v. Huatai USA LLC*, No. 19-CV-10756, 2020 WL 4750260, at *2 (S.D.N.Y. Aug. 17, 2020); *Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, No. 14-CV-9992, 2015 WL 4190746, at *6 (S.D.N.Y. July 10, 2015) (holding that because "at this stage of the litigation, the existence of express oral contracts, implied contracts, or both is still in dispute" plaintiff "can plead breach of contract, unjust enrichment, account stated, and promissory estoppel in the alternative"). Accordingly, Plaintiff's account stated claim survives as to the January 2021 Broadcast, the March 2021 Broadcast, and the February 2021 Digital contracts.

C. Sanctions

"[D]ue process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (quotation marks omitted). More specifically, "[a]n attorney whom the court proposes to sanction must receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges." *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 725 (2d Cir. 2012) (quotation marks omitted). "At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d at 117. "The opportunity to respond is judged under a reasonableness standard: a full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may

suffice." *Id.* (citing *Klein v. Ulster Sav. Bank,* 127 F.3d 292, 295 (2d Cir. 1997) (per curiam) (collecting cases supporting this proposition and remanding to the district court to give attorney a chance to be heard on imposition of sanctions because none had been given).

The Court agrees with Plaintiff that in this instance, it received insufficient notice and opportunity to be heard before sanctions were imposed. While Defendants clearly requested sanctions in their opposition to Plaintiff's motion for summary judgment, because neither Party was provided the opportunity to submit reply briefs, Plaintiff did not have an opportunity to be heard in response to Defendants' sanctions request. (*See* Dkt. Nos. 34, 43.) While Plaintiff did have an opportunity to oppose Defendants' motion for summary judgment, Defendants' motion for summary judgment is not a model of clarity on the issue of sanctions. (*See* Dkt. No. 36.) Defendants' motion for summary judgment cites to the relevant standards regarding the imposition of sanctions, however, Defendants stopped short of making a clear request for sanctions. (*See* Dkt. No. 36, at 13–14.) Accordingly, the Court vacates the imposition of sanctions and will allow Plaintiff an opportunity to be heard on the Rule 37 sanctions matter. *See* Fed. R. Civ. P. 37; *In re 60 E. 80th St. Equities, Inc.,* 218 F.3d at 117 (noting that "[t]he opportunity to respond is judged under a reasonableness standard" and that "the opportunity to respond by brief or oral argument may suffice") (citation omitted).[3]

## II. Conclusion

For the foregoing reasons, Plaintiff's Motion is granted in part and denied in part, and Defendants' Motion is denied. Plaintiff's Motion is granted as to the January 2021 Digital contract, the account stated claim for the January 2021 Broadcast, the March 2021 Broadcast,

---

[3] Defendants additionally seek reconsideration of the Court's sanction, arguing that "the Court should have ordered a more severe sanction against Plaintiff." (Defs.' Mem. 2.) As the Court has vacated its sanction, it need not consider Defendants' argument at this stage.

and the February 2021 Digital contracts, and the Court's imposition of sanctions.  Plaintiff's Motion is denied as to the breach of contract claims for the April 2021 Broadcast, May 2021 Broadcast, December 2019 Digital, January 2020 Digital, February 2020 Digital, March 2020 Digital, May 2021 Digital, January 2021 Broadcast, March 2021 Broadcast, and February 2021 Digital contracts.  The Court will hold a telephonic status conference and provide the Parties with an opportunity to be heard on the sanctions matter on November 9, 2023 at 11 A.M.  The Clerk of Court is respectfully directed to terminate the pending Motions.  (Dkt. Nos. 68, 71.)

SO ORDERED.

Dated:  September 27, 2023
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge