UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TOWNSQUARE MEDIA, INC.,

                                  *Plaintiff*,

        v.

REGENCY FURNITURE, INC., *et al.*

                                  *Defendants*.

---

No. 21-CV-4695 (KMK)

<u>ORDER & OPINION</u>

<u>Appearances</u>:

Jared E. Paioff, Esq.
Gabrielle N. Esposito, Esq.
Schwartz Sladkus Reich Greenberg Atlas LLP
New York, NY
*Counsel for Plaintiff*

Alan L. Frank, Esq.
Alan L. Frank Law Associates, P.C.
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Townsquare Media, Inc. ("Townsquare") brings this Action against Regency Furniture,

Inc. ("Regency Furniture") and Regency Management Services, LLC ("Regency") (collectively,

"Defendants") alleging that Defendants breached their contractual obligations to Plaintiff.  (*See*

*generally* Notice of Removal, Ex. B ("Compl.") (Dkt. No. 1-2).)  Plaintiff initiated this Action on

May 10, 2021 in the Commercial Division of the Supreme Court of New York, Westchester

County.  (*See* Notice of Removal, Ex. A (Dkt. No. 1-1).)  On May 26, 2021, Defendants

removed the Action to this Court.  (*See* Compl.)  On June 3, 2025, the Court held a bench trial on

the merits.  (*See* Dkt. No. 104.)  Plaintiff presented two witnesses, William N. Campbell and

Robert Worshek.  (*See* Direct Testimony Affidavit of William Campbell ("Campbell Aff.") (Dkt. No. 99); Direct Testimony Affidavit of Robert Worshek ("Worshek Aff.") (Dkt. No. 100).)  The Court received documentary exhibits into evidence.  For the reasons that follow, the Court finds in favor of Plaintiff.

I. <u>Background</u>

Some context is needed in order to assess the merits of the Parties' arguments in this case.  *See Shnyra v. State St. Bank & Tr. Co*., No. 19-CV-2420, 2020 WL 6892078, at *1 (S.D.N.Y. Nov. 24, 2020) ("To contextualize the dispute at issue, a relatively detailed recitation of the procedural history of this case is warranted.").

This is a breach of contract action.  Plaintiff's Complaint alleges that Defendants entered into a number of advertising contracts—both digital and broadcast—with Townsquare over the course of several years, and that many of those contracts went uncompensated.  (*See* Compl. ¶¶ 11, 22–28.)

On September 28, 2022, the Court issued an Opinion and Order in response to the Parties' Cross-Motions for Summary Judgment.  (*See* Op. & Order ("Sept. 2022 Op.") (Dkt. No. 46).)  There, the Court concluded that Plaintiff had established liability as to fourteen contracts. (*See* Sept. 2022 Op. 22–24.)[1]  However, the Court concluded that Plaintiff failed to establish damages as to all but two of the contracts.  (*See id.* at 30.)  The reason for these failures fell into three distinct categories: (1) Plaintiff had failed to allege damages, (2) Plaintiff failed to provide a contract which gave rise to an invoice, or (3) the amount claimed in the invoice did not match the contract.  (*See id.*)  The Court concluded as to the five contracts in category (2)—the

---

[1] In general, the Court cites to the ECF-stamped page number in the upper righthand corner of each page. However, insofar as it cites to various court transcripts, the Court cites to the internal page and line numbers.

December 2020, January 2021 and March 2021 Broadcast contracts, and the January 2021 and February 2021 Digital contracts—that Plaintiff had failed to establish breach by failing to submit any invoice associated with the contract. (*See id.* 30.) As to seven contracts that fell in category (3)—the April 2021 and May 2021 Broadcast contracts, and the December 2019, January 2020, February 2020, March 2020, and May 2021 Digital contracts—the Court concluded that discrepancies between the invoices and the stated amount of damages created a material issue of fact as to the amount of damages. (*See id.* 32–33.) The Court also granted summary judgment in favor of Defendants as to Plaintiff's accounts stated claim, concluding that the claims were duplicative of Plaintiff's breach of contract claims. (*See id.* 41–44.)

On September 27, 2023, in response to the Parties' Cross-Motions for Reconsideration, the Court issued an Opinion and Order denying Defendants' Motion and partially granting Plaintiff's Motion. (*See generally* Op. & Order ("Sept. 2023 Op.") (Dkt. No. 75).) The Court concluded that it had overlooked evidence substantiating the existence and breach of the January 2021 Digital contract and thus granted Plaintiff's Motion for Reconsideration as to the January 2021 Digital contract. (*See id.* at 4–5.) The Court further granted Plaintiff's Motion as to the account stated claims for the January 2021 Broadcast, March 2021 Broadcast, and February 2021 Digital Contracts, because the Court had "declined to find contractual liability" on those three contracts in its 2022 Opinion. (*See id.* at 8–9.) [2]

Accordingly, ten agreements remained in issue on the eve of the bench trial:

---

[2] Plaintiff attested that the December 2020 invoice had been paid in full. (*See* 2022 Sept. Op. at 30.)

| Type of Contract | Contract | Disputed Issues |
|---|---|---|
| Broadcast | January 2021 | • Liability for breach of contract<br>• Liability for accounts stated |
| Broadcast | March 2021 | • Liability for breach of contract<br>• Liability for accounts stated |
| Broadcast | April 2021 | Amount of damages owed |
| Broadcast | May 2021 | Amount of damages owed |
| Digital | December 2019 | Amount of damages owed |
| Digital | January 2020 | Amount of damages owed |
| Digital | February 2020 | Amount of damages owed |
| Digital | March 2020 | Amount of damages owed |
| Digital | February 2021 | • Liability for breach of contract<br>• Liability for accounts stated |
| Digital | May 2021 | Amount of damages owed |

At trial, Defendants argued for the first time that Plaintiff had failed to establish injury sufficient to prove standing.  In support of this point, Defendants relied on two pieces of evidence: (i) Plaintiff provided invoices carrying logos of entities like "Townsquare IGNITE" ("IGNITE"), "Townsquare Media – Shore," and "Townsquare Media – Trenton" as evidence of damages and (ii) in response to an interrogatory from Defendants, Plaintiff identified IGNITE as a "wholly owned subsidiary of Plaintiff."  (*See* DX 33-B at 4.)[3]  According to Defendants, this evidence is sufficient to undermine Plaintiff's standing to bring the breach of contract claims in this case, because the agreements at issue had not involved Plaintiff, but instead other entities legally distinct from Plaintiff.  Accordingly, at the close of trial, Defendants moved for a directed

---

[3] In this opinion, "Tr." refers to the trial transcript (Dkt. No. 120), "PX" refers to Plaintiff's trial exhibits, and "DX" refers to Defendants' trial exhibits.

verdict as to Defendant Regency Management, Inc. on the ground that the IGNITE and other entities, rather than Plaintiff, were the appropriate parties to bring suit.  (*See* Bench Trial Transcript ("Trial Tr.") 69:24–70:17 (Dkt. No. 120).)  Defendants also moved for a directed verdict as to Defendant Regency Furniture, on the ground that no evidence had been presented as to its liability.  (*See* Trial Tr. 69:12–22.)

The Court ordered post-trial briefing.  (*See* Dkt. No. 104.)  Plaintiff argued that the interrogatory response that Defendants relied upon was inaccurate and erroneous; that in any event, the evidence presented at trial was sufficient to demonstrate that IGNITE was not a wholly owned subsidiary of Plaintiff; and that, in the alternative, Plaintiff could freely assign a contract to which it was a party to a subsidiary.  (*See* Pl. Post-Trial Br. ("Pl. Br.") (Dkt. No. 105).)  Defendants argued that "Plaintiff has failed to carry its burden of proving that it has Article III standing to prosecute the claims for Breach of Contract and Account Stated," because it could not "establish by a preponderance of the evidence using material from the trial record that it sustained an injury-in[]fact as a result of non-payment of amounts invoiced by Townsquare Media – Shore, Townsquare Media – Trenton, or IGNITE Townsquare."  (*See* Def. Opp. Post-Trial Br. ("Def. Opp. Br.") 1 (Dkt. No. 108).)

In support of its position, Plaintiff also provided a number of exhibits, some of which were not presented at trial.  (*See, e.g.*, Dkt. Nos. 105-2, 105-3, 105-4, 105-5, and 105-7.)  Further, Plaintiff amended the response to the interrogatory that Defendants rely upon for their standing defense.  (*See* Dkt. No. 105-6.)  In response, Defendants moved to strike the exhibits that were not admitted into evidence at trial.  (*See* Dkt. No. 110.)  Defendants also moved for sanctions on the ground that Plaintiff had failed to comply with its discovery obligations.  (*See* Dkt. No. 109.)

II.  <u>Motion to Strike</u>

The Court first addresses Defendants' Motion to Strike.  (*See* Mot. to Strike Pl.'s Post-Trial Brief ("Defs. Mot. to Strike") (Dkt. No. 110).)  Defendants argue that the Court must strike Exhibits 2–6 from Plaintiff's post-trial brief because these exhibits were not admitted at trial.  (*See id.* at 1.)  These exhibits are as follows:

- o  Exhibit 2: Form 10-K

- o  Exhibit 3: Plaintiff's Organization Chart

- o  Exhibit 4: Printout from a web-page

- o  Exhibit 5: Townsquare's Trademark Certification for IGNITE

- o  Exhibit 6: Plaintiff's Amended Objections and Responses to Defendants' Interrogatories

(*See* Dkt. Nos. 105-2; 105-3, 105-4, 105-5, 105-6.)  Defendants also moved to strike all references to documents that were not introduced at trial.  (*See* Defs. Mot. to Strike at 2–3 (moving to strike Plaintiff's references to exhibits appended to its Summary Judgment Motion, Defendants' Answer to the Complaint, Defendants' Proposed Findings of Fact and Conclusions of Law, and the Deposition of Brian Lang).)

As a general matter, courts do not consider evidence that was not received into the evidentiary record at trial, unless the Court chooses to re-open the record.  *See Hamrit v. Citigroup Glob. Mkts., Inc.*, No. 22-CV-10443, 2025 WL 1191014, at *1 n.2 (S.D.N.Y. Apr. 22, 2025) ("[The plaintiff's] post-trial brief attaches a number of exhibits, many of which were not admitted as evidence at trial.  The [c]ourt does not consider the attachments that are not in evidence." (internal citations omitted)), *appeal dismissed*, No. 25-1142, 2025 WL 2218121 (2d Cir. June 25, 2025); *Matter of Petition of Fire Island Ferries, Inc.*, No. 11-CV-3475, 2017 WL 2889497, at *2  (E.D.N.Y. July 6, 2017) (declining to consider post-trial submissions absent a re-

opening of the record because "[o]therwise the very purpose of a trial, including the truth seeking function of cross-examination and the significance of resting one's case, is undermined"); *Marini v. Adamo*, 995 F. Supp. 2d 155, 176 n.16 (E.D.N.Y. 2014) (rejecting arguments relying on evidence first introduced in a post-trial submission because "[o]bviously, this [c]ourt cannot consider evidence not introduced during the trial").

However, Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not subject to reasonable dispute," because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2). This rule applies "at any stage of the proceeding." *Id.* at 201(d). Accordingly, courts have taken judicial notice of facts outside of the trial record at this stage in the proceedings. *See, e.g., Vazquez v. 142 Knickerbocker Enters., Corp.*, No. 13-CV-6085, 2024 WL 4437164, at *9 n. 7 (E.D.N.Y. Oct. 7, 2024) (taking judicial notice of information available online in reaching findings of fact); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395, 399 n.3 (S.D.N.Y. 2016) (taking judicial notice of the existence of an article in issuing findings of fact).

While courts may not take judicial notice of statements made in Form 10-K filings on party websites for their truth, *see Cnty. of Rockland v. Triborough Bridge & Tunnel Auth.*, No. 24-CV-2285, 2025 WL 1927493, at *1 n.2 (S.D.N.Y. July 14, 2025) (collecting cases); *United States Sec. & Exch. Comm'n v. Passos*, 760 F. Supp. 3d 95, 111 (S.D.N.Y. 2024) ("Accordingly, the Court judicially notices [a Form 10-K filing], but not for the truth of its contents."); *Grecco v. Age Fotostock Am., Inc*., No. 21-CV-423, 2021 WL 3353926 (S.D.N.Y. Aug. 2, 2021) (taking judicial notice of a website's contents, but not to prove the truth of the content), they "may take judicial notice of official records from the United States Patent and Trademark Office and the United States Copyright Office." *Endobotics, LLC v. Fujifilm Healthcare Americas Corp.*, No.

24-CV-2266, 2025 WL 1549027, at *2 (S.D.N.Y. May 29, 2025); *see also Trove Brands LLC v. Jia Wei Lifestyle Inc*., No. 24-CV-3050, 2025 WL 580305, at *3 n.4 (S.D.N.Y. Feb. 21, 2025) (taking judicial notice of official records from the United States Patent and Trademark Office). Therefore, the Court takes judicial notice of the IGNITE trademark registration, and in particular that IGNITE's trademark is registered to Plaintiff.  (*See* Pl. Post-Trial Br., Ex 5 ("Trademark Registration") 12–13 (Dkt. No. 105).)

As to the remaining post-trial exhibits submitted by Plaintiff, Plaintiff does not identify—and the Court cannot find—any case law that would permit the Court to consider these exhibits. (*See* Pl. Opp. Mot. to Strike ("Pl. Opp. Mot. Strike") 8–12 (Dkt. No. 114).)  Therefore, for the purposes of this Opinion, the Court will limit its consideration to the following aspects of the record: the trial transcript; the affidavits submitted by each of Plaintiff's trial witnesses, as well as the related, admissible exhibits; the deposition designations from the depositions of Tara Kelly and Craig Jones; and Plaintiff's Objection and Responses to Defendants' First Set of Interrogatories.

### III.   Motion for Sanctions

In addition to their Motion to Strike, Defendants argue that the Court should sanction Plaintiff for failing to comply with its discovery obligations by submitting an inaccurate interrogatory response.  (*See* Mem. in Supp. Defs. Mot. for Sanctions ("Sanct. Mot.") 9–10 (Dkt. No. 109).)  Specifically, Defendants request that the Court dismiss Plaintiff's claims in their entirety.  (*See* Sanct. Mot. 11.)  For the reasons that follow, the Court denies Defendants' Motion.

Rule 26(e)(1)(A) provides that:

A party who has . . . responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some

> material respect the disclosure or response is incomplete or incorrect, and if the
> additional or corrective information has not otherwise been made known to the
> other parties during the discovery process or in writing . . . .

Fed. R. Civ. P. 26(e)(1)(A).  "The purpose of Rule 26 is to prevent the practice of sandbagging

an opposing party with new evidence." *FXRobott LLC v. Noetiq Rsch. Inc*., No. 25-CV-2264,

2025 WL 1782669, at *2 (S.D.N.Y. June 28, 2025) (quoting *Kelly v. Beliv LLC*, 2024 WL

1076217, at *5 (S.D.N.Y. Mar. 12, 2024) (internal quotation marks omitted)).

"Under Rule 37(c), '[i]f a party fails to provide information . . . as required by Rule 26(a)

or (e), the party is not allowed to use that information or witness to supply evidence on a motion,

at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Goolden

v. Wardak*, No. 19-CV-6257, 2024 WL 2046025, at *3 (S.D.N.Y. May 8, 2024) (quoting Fed R.

Civ. P. 37(c)(1)(A), (C) (internal citations omitted)).  As noted above, the Court will not consider

Plaintiff's amended interrogatory response, (*see* supra Section II), as it was submitted after the

close of the trial record.  Therefore, what remains at issue is whether additional sanctions (i.e.,

dismissal) under Rule 37 are appropriate.  Rule 37(c) provides that a court may "'order payment

of reasonable expenses, including attorney's fees, caused by the failure' to disclose or 'may

impose other appropriate sanctions.'" *Goolden*, 2024 WL 2046025, at *3 (quoting Fed R. Civ.

P. 37(c)(1)(A), (C)).

"Sanctions under [Rule 37] are 'entrusted to the court's discretion.'" *Barbera v. Grailed,

LLC*, No. 24-CV-3535, 2025 WL 2098635, at *8 (S.D.N.Y. July 25, 2025).  The Second Circuit

has cautioned that dismissal is a "drastic remedy" that should only be employed on "rare

occasions."  *See Spencer v. Doe*, 139 F.3d 107, 114 (2d Cir. 1998) (citation omitted); *see also

Pitre v. City of New York*, 713 F. Supp. 3d 13, 16 (S.D.N.Y.) ("Dismissal is a drastic remedy that

should be used only on rare occasions, . . . that is, only in extreme situations[.]" (internal

citations and quotation marks omitted)), *reconsideration denied*, 731 F. Supp. 3d 661 (S.D.N.Y. 2024).

"Courts consider several factors when deciding whether to dismiss a case under Rule 37." *Ali v. Dainese USA*, *Inc*., 577 F. Supp. 3d 205, 220–21 (S.D.N.Y. 2021) (citing *Agiwal v. Mid Island Mortg. Corp*., 555 F.3d 298, 302 (2d Cir. 2009)). "These factors include: '[i] the willfulness of the non-compliant party or the reason for noncompliance; [ii] the efficacy of lesser sanctions; [iii] the duration of the period of noncompliance; and [iv] whether the non-compliant party had been warned of the consequences of noncompliance.'" *Id.* (quoting *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017) (alteration adopted)).

Here, Plaintiff represents—and Defendants do not present any countervailing evidence—that Plaintiff's response to Defendants' interrogatory was erroneous and not willful. (*Compare* Pl. Opp. to Sanct. Mot. ("Pl. Opp. Sanct.") 4 (Dkt. No. 115) (representing that Plaintiff's interrogatory response was a "mistake" that Plaintiff was unaware of until trial) *with* Sanct. Mem. 11 (asserting in a conclusory fashion that if the interrogatory response was inaccurate, then "[that] means that Plaintiff was intentionally and grossly negligent during the discovery phase of this case").) And unlike other cases in which courts have found that a party has acted willfully, there is no circumstantial evidence that Plaintiff ignored repeated Court orders or other warnings. *See Drip Cap., Inc. v. JY Imports of NY Inc*., 348 F.R.D. 536, 562–563, 565 (E.D.N.Y. 2025) (finding willfulness where, inter alia, there was a pattern of non-compliance despite repeated warnings); *Vadnais v. United States*, No. 21-CV-12, 2023 WL 6504861, at *5 (S.D.N.Y. Oct. 5, 2023) (finding that "continued non-compliance in the face of warnings, indicates willful noncompliance"). In light of the lack of circumstantial or direct evidence of willfulness, the Court concludes that this factor cuts against Defendants' Motion. *Hurley v. Tozzer, Ltd*., No. 15-

CV-2785, 2017 WL 1318005, at *3 (S.D.N.Y. Feb. 10, 2017) ("[T]he lack of wilfulness [sic] or

bad faith on the part of plaintiff and his counsel weigh against the harsh sanction of dismissal"),

*report and recommendation adopted*, No. 15-CV-2785, 2017 WL 1064712 (S.D.N.Y. Mar. 21,

2017).

As to the question of the appropriateness of the requested sanction, the Court concludes

that Defendants have failed to justify the extreme sanction of dismissal in this case.  First, to the

extent that Defendants attempt to justify their request for dismissal by arguing that lesser

sanctions (i.e., monetary sanctions) did not deter Plaintiff from violating its discovery obligations

under Rule 26, the Court finds Defendants' logic unpersuasive.  On September 28, 2022, the

Court sanctioned Townsquare because its corporate designee, Brian Lang, had been

insufficiently prepared for his deposition.  *See Townsquare Media, Inc. v. Regency Furniture*,

Inc., No. 21-CV-4695, 2022 WL 4538954, at *2 (S.D.N.Y. Sept. 28, 2022).  Lang was deposed

on October 14, 2021.  The interrogatories Defendants take issue with were sent by Plaintiff on

August 13, 2021.  (*See* DX 33A at 7.)  Both issues occurred during the course of discovery, but

Plaintiff was not sanctioned until after discovery had closed.  (*Compare* Sanct. Mem. 5 (noting

that fact discovery closed on November 5, 2021), *with id.* at 8 (noting that the Court sanctioned

Plaintiff for the testimony of its corporate designee on September 28, 2022).)  Because the

conduct at issue here occurred before the monetary sanctions were imposed, the Court cannot

conclude those lesser monetary sanctions failed to deter Plaintiff from abiding by its discovery

obligations.

More importantly, dismissal is generally appropriate only "where a party fails to comply

with the court's discovery orders willfully, in bad faith, or through fault."  *Alcon Vision, LLC v.

Lens.com, Inc.*, No. 18-CV-407, 2022 WL 17685501, at *11 (E.D.N.Y. July 7, 2022) (quoting

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)).

For the reasons described above, the Court concludes that there is no evidence to support a

finding that Plaintiff's inaccurate interrogatory response was the product of willfulness or bad

faith. Therefore, this factor cuts against the imposition of sanctions. *See Yancey v. Pancoe*, No.

20-CV-6149, 2022 WL 2841917, at *2 (W.D.N.Y. July 21, 2022) (denying case-dispositive

sanctions where the discovery violations "resulted from [] counsel's lack of appropriate

diligence, not from any bad faith").

   As to the third factor, Defendants do not argue that Plaintiff failed to provide timely

responses to Defendants' discovery requests. (*See generally* Sanct. Mem.) Therefore, as to the

length of non-compliance, "[a]lthough [D]efendant[s] take[] issue with the substance of

[P]laintiff's discovery responses," the record does not demonstrate that "[P]laintiff has delayed

responding to discovery." *Hurley*, 2017 WL 1318005, at *4. This factor, too, cuts against

Defendants' Motion. *See id.*

   Finally, as to the question of notice, the Court notes that at the time of the inaccurate

interrogatory response, Plaintiff had not received any prior warnings about its failure to comply

with its discovery obligations. (*See* Sanct. Mem. 5 (noting that fact discovery closed on

November 5, 2021); *id.* at 8 (noting that the Court sanctioned Plaintiff for the testimony of its

corporate designee on September 28, 2022).) Therefore, the Court concludes that Plaintiff was

not on notice that failure to comply with its discovery obligations could result in sanctions, much

less dismissal. *See Komatsu v. City of New York*, No. 18-CV-3698, 2021 WL 4427015, at *5

(S.D.N.Y. Sept. 27, 2021) (concluding dismissal under Rule 37 was not appropriate where the

plaintiff "was not expressly warned that his noncompliance with the discovery order could result

in dismissal").

In sum, the Court concludes that there is not sufficient evidence of bad faith or willfulness to justify dismissal of Plaintiff's case. Therefore, the Court denies Defendant's Motion for Sanctions.

### IV.   Findings of Fact and Conclusions of Law

What follows constitutes the Court's findings of fact and conclusions of law for purposes of Federal Rule of Civil Procedure 52(a)(1). To the extent any statement labeled as a finding of fact is a conclusion of law, it shall be deemed a conclusion of law, and vice versa.

### A.   Findings of Fact

#### 1.   Findings of Fact Relating to Plaintiff's Standing

Central to the dispute at trial was whether Townsquare has standing to bring the claims at issue here. The Court therefore makes findings of fact relevant to this issue.

The Court finds that Plaintiff generated and sent the invoices in the trial record. On direct examination, both William Campbell and Robert Worshek testified—apparently without knowledge of Defendants' standing defense—that it was Plaintiff who tendered the invoices relied upon by Plaintiff at trial (*see, e.g.,* Worshek Aff. ¶ 86 (testifying that "*Townsquare* rendered two separate invoices to Regency . . ." (emphasis added)); Campbell Aff. ¶ 48 (testifying that "*Townsquare* rendered two separate invoices to Regency . . ." (emphasis added).) The Court finds the testimony of Robert Worshek particularly credible on this score, as he is Plaintiff's Chief Accounting Officer, and his role involves "overseeing [] Townsquare's [a]ccounting [d]epartment" including during the period that Regency was a customer of Townsquare. (*See* Worshek Aff. ¶ 7.) Defendants hang their hats on the fact that the invoices for the contracts appear to carry the logos of entities other than Plaintiff—such as IGNITE. (*See* Defs. Opp. 20–21.) But even this evidence actually cuts in favor of Plaintiff, because the

trademark owner of the IGNITE logo is *Plaintiff*, rather than another entity.  (*See* Trademark Registration 12–13.)

Furthermore, the IGNITE invoices upon which Defendants rely include fine print at the bottom which states: "[a]s of October 1, 2020, we are implementing a new AR portal and changing to a paperless invoicing system.  The advantage of an electronic format for you is that you will be able to log on to the portal, view, print, and pay *your Townsquare Media invoices* via ACH."  (*See e.g.*, PX 15 at 2 (Dkt. No. 99-19) (emphasis added).)  These statements clearly refer to the invoices they are printed on, and therefore indicate that the invoices they are printed on are Townsquare Media invoices.

Finally, when Regency failed to pay the balances due on some of the invoices, its employee, Tara Kelly, reached out to *Plaintiff's* employee, Fran Northridge.  (*See* PX 67 at 2–5 (Dkt. No. 99-71).)  In a telling exchange, Kelly stated: "I'm sure *you* have probably sent these invoices to my accounting department already . . . I need copies of the following invoices . . ." (*See id.* at 3 (emphasis added).)  This exchange further bolsters the finding that it was Townsquare which sent the invoices at issue.

    2.   Findings of Fact Relating to the Course of Dealings Between the Parties

During the course of their business relationship, Plaintiff ran digital and broadcast (or radio) advertisements for Defendant Regency Management.[4]  (*See* Campbell Aff. ¶ 3.)  Regency purchased broadcast advertisements in the following manner: Regency would provide

---

[4] Plaintiff conceded at trial that it had failed to adduce evidence as to Regency Furniture's liability.  (*See* Tr. 70:19–20 ("Your Honor, [Plaintiff] [does not] oppose the first branch of Mr. Frank's motion [i.e., Defense counsel's Motion for a Directed Verdict] regarding Regency Furniture, Inc.").)  Therefore, the Court grants Defendants' Motion for a Directed Verdict as to Regency Furniture.  *See Renz by Renz v. Carota*, No. 87-CV-487, 1991 WL 165677, at *2 (N.D.N.Y. Aug. 26, 1991) ("Insofar as the plaintiffs offered no evidence at trial to support this allegation, the court deems the claim abandoned and dismisses it."), *aff'd sub nom. Renz v. Beeman*, 963 F.2d 1521 (2d Cir. 1992).

Townsquare with a desired monthly radio budget, as well as its desired "flight[s] and promotion[s]"; Townsquare would return with a proposal for the use of the budget; Regency would approve the proposal, subject to later modifications. (*See* PX 3 ("Kelly Dep.") 19:21–21:2, 21:15–19 (Dkt. No. 101-3).) As for digital advertisements, "there was no proposal presented." (*See* Kelly Dep. 21:21–21:23.) Instead, Regency provided Townsquare with an agreed upon budget, and Townsquare performed in accordance with the budget. (*See* Kelly Dep. 21:21–22:2.)

       3.  <u>Findings of Fact Relating to the January 2021 Broadcast, March 2021 Broadcast and February 2021 Digital Agreements</u>

In its previous Opinions in this Case, the Court made no determination as to liability or damages regarding three alleged agreements: the January 2021 Broadcast Agreement, the March 2021 Broadcast Agreement, and the February 2021 Digital Agreement. (*See* Sept. 2022 Op. 30; 2023 Op. 7–8.) The Court therefore makes factual findings as to these three agreements below.

       a.  <u>January 2021 Broadcast Services</u>

On January 1, 2021, Townsquare and Regency entered into an agreement for radio/broadcast advertising services for January 2021. (*See* Campbell Aff. ¶ 18; PX 2 at 2 (Dkt. No. 99-6).) The agreement was memorialized in a written Order Form on Regency's letterhead (in the name of its licensor, Ashley Homestore), for a total budget of $35,700.00. (*See* PX 2 at 2–3; Kelly Dep. 81:19–82:6, 90:8–91:6.) Townsquare provided the airtime for Regency's radio/broadcast advertisement pursuant to the Station/Publication information set forth in the agreements, and Townsquare provided affidavits of performance to that effect. (*See* Campbell Aff. ¶ 21; *see generally* PX 2.) Townsquare rendered two separate invoices to Regency, bearing numbers 2240674-1 and 2255706-1. (*See* Campbell Aff. ¶¶ 22–24.) Invoice 2255706-1, which totaled $14,450.00, was paid in full on January 31, 2021. (*See* Campbell Aff. ¶¶ 24–25.)

Invoice 2240674-1 was not paid, leaving an outstanding balance of $21,250.00. (*See* Campbell Aff. ¶¶ 27–28; PX 1 ("Aging Report") 2 (Dkt. No. 99-3) (noting that Invoice 2240674-1 from "Townsquare Media" remains unpaid); Craig Jones Deposition Transcript ("Jones Dep.") 41:19–42:21, 44:20–45:6 (Dkt. No. 101-6).)

    b. March 2021 Broadcast Services

On March 1, 2021, Townsquare and Regency entered into an agreement for radio/broadcast advertising services for March 2021. (*See* Campbell Aff. ¶ 30; PX 7 at 2 (Dkt. No. 99-11).) The agreement was memorialized in a written Order Form on Regency's letterhead (in the name of its licensor, Ashley Homestore), for a total budget of $31,025.00. (*See* PX 7 at 2–3; Campbell Aff. ¶¶ 30–31.) Townsquare provided the airtime for Regency's radio/broadcast advertisement pursuant to the Station/Publication information set forth in the agreements, and Townsquare provided affidavits of performance to that effect. (*See* Campbell Aff. ¶ 34; *see generally* PX 7.)

Although the budget (contract amount) for the March 2021 Broadcast agreement was for $31,025.00, $5,525.00 in charges from that budget were invoiced in April 2021. (*See* Campbell Aff. ¶ 33.) This is a result of Townsquare's "Spring Savings" promotional campaign, which ran from March 31, 2021 to April 4, 2021. (*See id.*; PX 7 at 2–3.) Because this campaign bridged two months, it was invoiced in the latter month (i.e., April instead of March 2021). (*See* Campbell Aff. ¶ 33.) Therefore, Townsquare invoiced Regency $25,500.00 for broadcast advertising during the month March. (*See id.*)

Townsquare tendered two separate invoices—Invoice 2405654-1 and Invoice 2406094-1—to Regency reflecting charges for the radio/broadcast advertisement spots. (*See id.* ¶¶ 35–37.) Neither invoice was paid by Regency, leaving an outstanding balance of $25,500.00. (*See*

*id.* ¶¶ 40–41; Aging Report 2 (reflecting the fact that Regency's records indicate that neither Invoice 2405654-1 nor Invoice 2406094-1 have been paid).)

### c.   February 2021 Digital Services

On January 25, 2021, Tara Kelly, Regency's Director of Marketing and Advertising, provided Townsquare with a digital budget for February 2021 totaling $36,802.00.  (*See* PX 12 at 2 (Dkt. No. 99-16); Campbell Aff. ¶¶ 43–44.)  Townsquare rendered the requisite digital services under the agreement by displaying Regency's digital advertisements on its landing pages, formatting the advertising files, seeking and obtaining any requested approvals, and allocating the budget as appropriate.  (*See* Campbell Aff. ¶ 46; *see also* PX 13 at 5 (providing digital performance data for January through March 2021) (Dkt. No. 99-17).)

Plaintiff attests that it submitted two invoices in connection with its performance: Invoice 2266301-5 and Invoice 2266301-6.  (*See* Campbell Aff. ¶¶ 49–50; Worshek Aff. ¶¶ 87–88.)  The total from these invoices—$36,802.00—remains unpaid from the February 2021 Digital Services Agreement.  (*See* Campbell Aff. ¶¶ 53–54; Worshek Aff. ¶ 90.)

4.   Findings of Fact Relating to the April 2021 Broadcast, May 2021 Broadcast, December 2019 Digital, January 2020 Digital, February 2020 Digital, March 2020 Digital, and May 2021 Digital agreement

As noted above, in the Court's previous Opinions, it concluded that Plaintiff had established liability as to the April 2021 Broadcast, April 2021 Broadcast, May 2021 Broadcast, December 2019 Digital, January 2020 Digital, February 2020 Digital, March 2020 Digital, and May 2021 Digital agreements, but declined to rule on damages.  (*See* 2022 Op. 27–33; 2023 Op. 5–7.)  Accordingly, the Court addresses the evidence of damages relating to those contracts below.

a.  April 2021 Broadcast Services

Campbell testified that the original budget for the April 2021 Broadcast agreement was $25,500.00.  (*See* Campbell Aff. ¶ 59; PX 16 at 4 (Dkt. No. 99-20).)  On or about April 25, 2021, Townsquare rendered four separate invoices to Regency reflecting charges for the radio/broadcast advertisement spots for April 2021.  (*See* Campbell Aff. ¶ 64; Worshek Aff. ¶ 25.)  The first invoice, Invoice 2405654-2, contains charges totaling $2,125.00.  (*See* Campbell Aff. ¶ 65; Worshek Aff. ¶ 26; PX 18 at 2 (Dkt. No. 99-22).)  The second invoice, Invoice 2406094-2, contains charges totaling $3,400.00.  (*See* Campbell Aff. ¶ 66; Worshek Aff. ¶ 27; PX 19 at 2 (Dkt. No. 99-23).)  The third invoice, Invoice 2465325-1, contains charges totaling $6,800.00.  (*See* Campbell Aff. ¶ 67; Worshek Aff. ¶ 28; PX 17 at 2 (Dkt. No. 99-21).)  The fourth invoice, Invoice 2465044-1, contains charges totaling $11,900.00.  (*See* Campbell Aff. ¶ 98; Worshek Aff. ¶ 28; PX 20 at 2 (Dkt. No. 99-24).)  Together, these invoices total $24,225.00.

The discrepancy between the original April 2021 Broadcast budget ($25,500.00) and the final invoiced amount ($24,225.00) is explained by two "campaign modifications" run by Plaintiff.  Between March 31, 2021 and April 4, 2021, Plaintiff ran a campaign called "Spring Savings."  (*See* Campbell Aff. ¶ 61.)  This campaign caused a portion of the March 2021 budget ($5,525.00) to be reallocated to the April 2021 budget.  (*See id.*)  Between April 28, 2021 and May 2, 2021, Plaintiff ran a campaign called the "Big Deal," which reallocated a portion ($6,800.00) of the April budget to the May budget.  (*See id.* ¶ 62.)  Thus, the original $25,500.00 was increased by $5,525.00 but decreased by $6,800.00, for a total invoiced amount of $24,225.00.

These invoices were generated by Plaintiff's accounting department.  (*See* Campbell Aff. ¶ 70; Worshek Aff. ¶ 31.)  To date, Regency has not paid the amounts due for any of these

services.  (*See* Campbell Aff. ¶ 71; Worshek Aff. ¶ 32; Aging Report 2 (capturing each of the four outstanding invoices).)

             b.  <u>May 2021 Broadcast Services</u>

The budget for the May 2021 Broadcast Agreement was $19,550.00, as reflected in the May 30, 2025 email exchange between Regency and Townsquare.  (*See* PX 21 at 4 (Dkt. No. 99-25); Campbell Aff. ¶ 74.)  On or about May 30, 2021, Townsquare rendered two separate invoices to Regency which reflected the charges for the radio/broadcast advertising spots.  (*See* Campbell Aff. ¶ 76; Worshek Aff. ¶ 34.)  The first invoice, Invoice 2465044-2, contains charges totaling $4,250.00.  (*See* PX 22 at 2 (Dkt. No. 99-26); Campbell Aff. ¶ 77; Worshek Aff. ¶ 35; Aging Report 2.)  The second invoice, Invoice 2465325-2, contains charges totaling $2,550.00. (*See* PX 23 at 2 (Dkt. No. 99-27); Campbell Aff. ¶ 78; Worshek Aff. ¶ 36; Aging Report 2.)  The total of these invoices is $6,800.00.

The discrepancy between the May 2021 budget ($19,500.00) and the ultimate amount invoiced for May 2021 ($6,800.00) reflects the fact that Townsquare ceased providing services to Regency in May 2021 because of Regency's continued failure to pay outstanding invoices. (*See* Campbell Aff. ¶ 75.)  Thus, the only outstanding cost for May 2021 was the $6,800.00 that was moved from the April 2021 to the May 2021 invoice because of "The Big Deal" campaign. (*See id.*)

The invoices were generated by Plaintiff's accounting department.  (*See* Campbell Aff. ¶ 79; Worshek Aff. ¶ 37.)  To date, Regency has not paid any of the outstanding sums on these invoices.  (*See* Campbell Aff. ¶ 80; Worshek Aff. ¶ 38; Aging Report 2.)

c.  December 2019 Digital Services

The budget allocated to the December 2019 Digital Service Agreement was $162,000.00. (*See* PX 24 at 2–3 (Dkt. No. 99-28); Campbell Aff. ¶ 83.)  Townsquare rendered six invoices to Regency reflecting the charges for digital advertising services pursuant to the December 2019 budget.  (*See* Campbell Aff. ¶ 84; Worshek Aff. ¶ 42.)  The first invoice, Invoice 1364042-1, contains charges totaling $15,000.00.  (*See* PX 25 at 2 (Dkt. No. 99-29); Campbell Aff. ¶ 85; Worshek Aff. ¶ 43; Aging Report 2.)  The second invoice, Invoice 1364136-1, contains charges totaling $10,000.00.  (*See* PX 28 at 2 (Dkt. No. 99-32); Campbell Aff. ¶ 86; Worshek Aff. ¶ 44; Aging Report 2.)  The third invoice, Invoice 1364232-1, contains charges totaling $12,000.00. (*See* PX 31 at 2 (Dkt. No. 99-35); Campbell Aff. ¶ 87; Worshek Aff. ¶ 45; Aging Report 2.)  The fourth invoice, Invoice 1364386-1, contains charges totaling $45,000.00.  (*See* PX 34 at 2 (Dkt. No. 99-38); Campbell Aff. ¶ 88; Worshek Aff. ¶ 46; Aging Report 2.)  The fifth invoice, Invoice 1364487-1, contains charges totaling $30,000.00.  (*See* PX 37 at 2 (Dkt. No. 99-41); Campbell Aff. ¶ 89; Worshek Aff. ¶ 47; Aging Report 2.)  The sixth invoice, Invoice 1364543-1, contains charges totaling $50,000.00.  (*See* PX 40 at 2 (Dkt. No. 99-44); Campbell Aff. ¶ 90; Worshek Aff. ¶ 48; Aging Report 2.)

Regency partially paid a number of the invoices for the December 2019 Digital Agreement.  The first, second, and third invoices were paid in full.  (*See* Campbell Aff. ¶¶ 85–87.)  The fourth invoice was partially paid: Regency made a partial payment of $3,200.00 on July 31, 2020 and Townsquare provided an invoice adjustment of $2,500.00 on November 1, 2020.  (*See* Campbell Aff. ¶ 88; Worshek Aff. ¶ 46.)  Thus, the outstanding total on the fourth invoice was $39,300.00.  (*See* PX 34 at 2; PX 36 at 2 (Dkt. No. 99-40); Aging Report 2.)  The fifth invoice was partially paid: Regency paid $1,700.00 on July 31, 2020 and Townsquare

provided an invoice adjustment of $1,000.00 on November 1, 2020.  (*See* Campbell Aff. ¶ 89; Worshek Aff. ¶ 47.)  The outstanding total on the fifth invoice is therefore $27,300.00.  (*See* PX 37 at 2; Aging Report 2.)  The sixth invoice was partially paid: Regency paid $3,200.00 on July 31, 2020 and Townsquare provided an invoice adjustment of $2,500.00 on November 1, 2020. (*See* Campbell Aff. ¶ 90; Worshek Aff. ¶ 48.)  The outstanding total for the sixth invoice is therefore $44,300.00.  (*See* PX 40; Aging Report 2.)

Therefore, the sum total due under the six invoices for the December 2019 Digital Services is $110,900.00.  This sum remains unpaid as of today.  (*See* Campbell Aff. ¶ 94; Worshek Aff. ¶ 51.)

### d.  January 2020 Digital Services

The budget for the January 2020 Digital agreement was $163,500.00.  (*See* Campbell Aff. ¶ 96; PX 44 at 2–3 (Dkt. No. 99-48).)  Townsquare rendered six invoices reflecting the charges for digital services under the January 2020 Digital Budget.  (*See* Campbell Aff. ¶ 97; Worshek Aff. ¶ 53.)  The first invoice, Invoice 1395335B-3, contains charges totaling $45,000.00.  (*See* Campbell Aff. ¶ 98; Worshek Aff. ¶ 54; PX 45 at 2 (Dkt. No. 99-49).)  The second invoice, Invoice 1395365A-2, contains charges totaling $40,000.00.[5]  (*See* Campbell Aff. ¶ 99; Worshek Aff. ¶ 55; PX 46 at 2 (Dkt. No. 99-50).)  The third invoice, Invoice 1395386A-2, contains charges totaling $35,000.00.  (*See* Campbell Aff. ¶ 100; Worshek Aff. ¶ 56; PX 47 at 2 (Dkt. No. 99-51).)  The fourth invoice, Invoice 1395433A-2, contains charges totaling $21,500.00.  (*See* Campbell Aff. ¶ 101; Worshek Aff. ¶ 57; PX 48 at 2 (Dkt. No. 99-52).)  The

---

[5] Campbell's affidavit states that the second invoice is Invoice 1395365A-2, but later appears to refer to the same invoice as Invoice 1395365-1.  (*See* Campbell Aff. ¶ 99.)  Because the referenced exhibit, Worshek's testimony, and Defendants' Aging Report all refer to the invoice as 1395365A-2, (*see* PX 46; Aging Report 2; Worshek Aff. ¶ 55), the Court assumes that the reference to Invoice 1395365-1 was in error.

fifth invoice, Invoice 1395452A-2, contains charges totaling $12,000.00.  (*See* Campbell Aff. ¶ 102; Worshek Aff. ¶ 58; PX 49 at 2 (Dkt. No. 99-53).)  The sixth invoice, Invoice 1395462A-2, contains charges totaling $10,000.00.  (*See* Campbell Aff. ¶ 103; Worshek Aff. ¶ 59; PX 50 at 2 (Dkt. No. 99-54).)

Regency paid some invoices for the January 2020 Digital Agreement.  Specifically, the fifth and sixth invoices were paid in full.  (*See* Campbell Aff. ¶¶ 102–103.)  Therefore, the sum total due under the six invoices for the January 2020 Digital Services is $141,500.00.  This sum remains unpaid as of today.  (*See* Campbell Aff. ¶ 106; Worshek Aff. ¶ 62; Aging Report 2.)

### e. February 2020 Digital Services

The budget amount for the February 2020 Digital agreement was $195,000.00.  (*See* Campbell Aff. ¶ 109; PX 51 at 2–3 (Dkt. No. 99-55).)  Townsquare tendered six invoices reflecting the charges for digital services under the February 2020 Digital Budget.  (*See* Campbell Aff. ¶ 110; Worshek Aff. ¶ 64.)  The first invoice, Invoice 1450810-2, contains charges totaling $45,000.00.  (*See* Campbell Aff. ¶ 111; Worshek Aff. ¶ 65; PX 52 at 2 (Dkt. No. 99-56).)  The second invoice, Invoice 1450830-2, contains charges totaling $15,000.00.  (*See* Campbell Aff. ¶ 112; Worshek Aff. ¶ 66; PX 53 at 2 (Dkt. No. 99-57).)  The third invoice, Invoice 1450792-3, contains charges totaling $55,000.00.  (*See* Campbell Aff. ¶ 113; Worshek Aff. ¶ 67; PX 54 at 2 (Dkt. No. 99-58).)  The fourth invoice, Invoice 1450817-2, contains charges totaling $15,000.00.  (*See* Campbell Aff. ¶ 114; Worshek Aff. ¶ 68; PX 55 at 2 (Dkt. No. 99-59).)  The fifth invoice, Invoice 1450804-2, contains charges totaling $40,000.00.  (*See* Campbell Aff. ¶ 115; Worshek Aff. ¶ 69; PX 56 at 2 (Dkt. No. 99-60).)  The sixth invoice, Invoice 1450834-2, contains charges totaling $25,000.00.  (*See* Campbell Aff. ¶ 116; Worshek Aff. ¶ 70; PX 56 at 2 (Dkt. No. 99-61).)

Regency partially paid a number of the invoices for the February 2020 Digital

Agreement.  Specifically, the fifth was paid in full.  (*See* Campbell Aff. ¶¶ 115.)  Therefore, the

sum total due under the six invoices for the February 2020 Digital Services is $155,000.00.  This

sum remains unpaid as of today.  (*See* Campbell Aff. ¶ 119; Worshek Aff. ¶ 73; Aging Report 2.)

        f.   <u>March 2020 Digital Services</u>

The budget amount for the March 2020 Digital Agreement was originally $195,000.00.

(*See* Campbell Aff. ¶ 122; PX 58 at 2 (Dkt. No. 99-62).)  However, as a result of the COVID-19

pandemic, Townsquare performed services under a reduced budget of $152,170.00. (*See*

Campbell Aff. ¶ 122.)

Townsquare tendered six invoices reflecting the charges for digital services under the

March 2020 Digital Budget.  (*See* Campbell Aff. ¶ 123; Worshek Aff. ¶ 75.)  The first invoice,

Invoice 1484654-3, contains charges totaling $42,283.81.  (*See* Campbell Aff. ¶ 124; Worshek

Aff. ¶ 76; PX 59 at 2 (Dkt. No. 99-63).)  The second invoice, Invoice 1494398-2, contains

charges totaling $14,592.11.  (*See* Campbell Aff. ¶ 125; Worshek Aff. ¶ 77; PX 60 at 2 (Dkt. No.

99-64).)  The third invoice, Invoice 1494375-2, contains charges totaling $38,636.37.  (*See*

Campbell Aff. ¶ 126; Worshek Aff. ¶ 78; PX 61 at 2 (Dkt. No. 99-65).)  The fourth invoice,

Invoice 1494391-2, contains charges totaling $8,847.51.  (*See* Campbell Aff. ¶ 127; Worshek

Aff. ¶ 79; PX 62 at 2 (Dkt. No. 99-66).)  The fifth invoice, Invoice 1494371-2, contains charges

totaling $34,839.55.  (*See* Campbell Aff. ¶ 128; Worshek Aff. ¶ 80; PX 63 at 2 (Dkt. No. 99-

67).)  The sixth invoice, Invoice 1494386-2, contains charges totaling $12,970.65.  (*See*

Campbell Aff. ¶ 129; Worshek Aff. ¶ 81; PX 64 at 2 (Dkt. No. 99-68).)

The sum total due under the six invoices for the March 2020 Digital Services is $152,170.00.  This sum remains unpaid as of today.  (*See* Campbell Aff. ¶ 133; Worshek Aff. ¶ 84; Aging Report 2.)

g.   March 2020 Digital Services

The budget amount for the May 2021 Digital Agreement was originally $25,347.00.  (*See* Campbell Aff. ¶ 135; PX 65 at 2 (Dkt. No. 99-69).)  However, during this period, Townsquare ceased providing services to Regency because of their refusal to pay the outstanding invoices, resulting in a reduced budget of $20,181.00.  (*See* Campbell Aff. ¶ 135.)  Townsquare rendered a single invoice, Invoice 2266301-10, reflecting charges of $20,181.00 for the digital advertising services it had performed under the May 2021 budget.  (*See* Campbell Aff. ¶ 136; Worshek Aff. ¶ 92; PX 66 at 2 (Dkt. No. 99-70).)  This sum remains unpaid as of today.  (*See* Campbell Aff. ¶ 139; Worshek Aff. ¶ 94; Aging Report 2.)

B.   Conclusions of Law

1.   Assignment and Standing

The sole defense raised by Defendants at trial and in their post-trial submission is that Plaintiff does not have standing to bring the instant breach of contract claim.  (*See generally* Defs. Opp.)  For the reasons that follow, the Court finds Defendants' argument fails as a matter of law.

First, as a constitutional matter, Defendants' standing argument does not implicate Article III because the Second Circuit has squarely held that the "pre-suit assignment of [a plaintiff's] claims does not pose a constitutional roadblock," *Fund Liquidation Holdings LLC v. Bank of Am. Corp.*, 991 F.3d 370, 382 (2d Cir. 2021), which is to say that the assignment of a claim does not divest the original contracting party of standing, *see id.* 380–382; *Phoenix Light SF Ltd. v. Wells Fargo Bank, N.A.*, No. 14-CV-10102, 2022 WL 2702616, at *11 (S.D.N.Y. July

24

12, 2022) (concluding that the holding in *Valdin Invs. Corp. v. Oxbridge Cap. Mgmt., LLC*, 651 F. App'x 5, 7 (2d Cir. 2016) (summary order), that an "'assignment can result in a loss of [Article III] standing' . . . is no longer good law, as it was subsequently overruled by the Second Circuit in *Fund Liquidation*."), *aff'd sub nom. Commerzbank AG v. Wells Fargo Bank, N.A.*, No. 22-1879, 2024 WL 4554081 (2d Cir. Oct. 23, 2024).

There appears to be no dispute that it was Plaintiff that entered into the legally binding agreements with Regency that form the basis of this Action.  (*Compare* Campbell Aff. ¶¶ 18, 30, 43, 59, 74, 83, 96, 109, 122, 135; Tara Kelly Dep. 7:9–10 (stating that she "book[ed] radio through Townsquare," not a different entity); 17:18–23 (Q: "And your role at [Regency], what was your involvement with Townsquare *Media*?" A: "To place advertising." Q: "What type of advertising did you place with them?" A: "Radio and digital at different periods.") *with* DX (failing to introduce any countervailing evidence).)  Accordingly, the only way to make sense of Defendants' argument that Plaintiff does not have standing to bring suit on a contract it was originally party to would be to conclude that Plaintiff had assigned its rights to a purportedly separate legal entity.

Even if the Court were to accept, arguendo, that Plaintiff had assigned its rights away, such an assignment would necessarily had to have happened prior to the institution of this lawsuit, and therefore would not undermine Plaintiff's Article III standing.  As discussed above, Defendants' argument on this score relies entirely on the invoices produced in this case, which they allege have been sent by other entities.  (*See* Defs. Opp. 20–21.)  Defendants argue that because the invoices were sent by other entities, those entities must have had the rights to enforce the contract, rather than Plaintiff.  (*See id.*)  By this logic, Plaintiff would have had to assign these other entities its rights under the contract prior to the generation of the invoices.  But

almost all of the invoices appear to have been generated prior to the institution of this Action.[6]
(*See e.g.,* PX 46, PX 54, PX 62.)  If the invoices are Defendants' only evidence that an
assignment happened, and the invoices pre-date this lawsuit, then if an assignment occurred, it
must have happened before the lawsuit.  Thus, even if Plaintiff *had* assigned away its right to sue
under the contracts to some other legal entity, it would have done so prior to this Action, and
thus would retain Article III standing.  *See Fund Liquidation Holdings LLC*, 991 F.3d at 380–82
(holding that pre-suit assignment does not affect whether a party has suffered an injury in fact
sufficient to confer Article III standing); *Weihai Lianqiao Int'l Coop Grp. Co. v. A Base IX Co.
LLC*, No. 21-CV-10753, 2025 WL 2029916, at *27 (S.D.N.Y. July 21, 2025) ("Defendants argue
that Plaintiff lacks standing to sue on certain purchase orders because it assigned its right of
collection for $184,131 on these purchase orders to PICC. . . . This argument fails because the
Second Circuit has made clear that a pre-suit assignment of interest does not affect Article III
standing.").

Second, "[u]nder both federal and New York state law, challenges to standing must be
raised in a party's answer or pre-answer motion to dismiss."  *U.S. Bank Nat'l Ass'n v. Mattone
Grp. Jamaica Co., LLC*, No. 21-CV-9342, 2024 WL 4265291, at *3 (S.D.N.Y. Sept. 23, 2024)
(citing *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 169
(S.D.N.Y. 2015)).  "[A]n assertion of a party's incapacity to sue should fall within the class of
threshold defenses—issues that must be raised and disposed of at the outset of the suit."  *Id.*
(quoting *Allan Applestein TTEE FBO D.C.A. v. Province of Buenos Aires*, 415 F.3d 242, 245 (2d
Cir. 2005) (internal quotation marks omitted)).  Where the defendant does not raise the argument

---

[6] Only the May 2021 invoice appears to have been generated after this Action
commenced.  (*See* PX 66.)  Because the Court concludes that Defendants' standing argument
fails on the merits (*see* infra), this fact does not change its ultimate conclusion.

that the plaintiff lacked standing in its answer or pre-answer motions, that argument is deemed

waived. *See U.S. Bank Nat'l Ass'n,* 2024 WL 4265291, at *3 (deeming standing argument

waived because the defendant had failed to raise it in the answer or pre-answer motion to

dismiss); *Wilmington Tr. v. Winta Asset Mgmt. LLC*, No. 20-CV-5309, 2022 WL 2657166, at *5

(S.D.N.Y. July 8, 2022) ("Because the [a]nswering [d]efendants did not raise the issue of the

plaintiff's standing to foreclose in their [a]nswer or the pre-answer motion to dismiss, the

[a]nswering [d]efendants waived their standing challenge."); *Focus Prods. Grp. Int'l, LLC v.*

*Kartri Sales Co., Inc.*, No. 15-CV-10154, 2021 WL 1946756, at *2 (S.D.N.Y. May 14, 2021)

(rejecting defendant's "11th hour" argument that the plaintiff lacked standing because the

argument was not raised "at the outset of the suit" or at any time before the eve of trial).

Here, Defendants failed to raise the issue of standing prior in their answer or any pre-

answer motions. (*See generally* Answer (Dkt. No. 16) (failing to raise standing as an affirmative

defense).) Moreover, all of the evidence Defendants have marshalled in support of their standing

argument was available to them at the close of discovery, which was complete nearly four years

ago. (*See* Dkt. No. 31 (dated November 4, 2021, and describing discovery as "complete").)

Certainly, by the time that the Parties' summary judgment motions were filed, Defendants had in

their possession all of the information that they now rely upon for their standing argument. And

yet, Defendants' Motion for Summary Judgment makes no mention of standing. (*See generally*

Defs. Mem. in Supp. Summ. J. ("Defs. Summ. J. Mem.") (Dkt. No. 36) (failing to mention

standing).) Nor does Defendants' Motion for Reconsideration make any mention of this

argument. (*See generally* Defs. Mem. in Supp. Reconsideration ("Defs. Reconsideration Mem.")

(Dkt. No. 72) (failing to mention standing).) Even Defendants' pre-trial submissions fail to

make mention of the argument upon which their entire defense now relies. (*See generally* Joint

Pre-Trial Order (failing to mention standing); Proposed Findings of Fact and Conclusions of Law ("Feb. Proposed Findings and Conclusions") (Dkt. No. 87) (failing to mention standing); Proposed Findings of Fact and Conclusions of Law ("May Proposed Findings and Conclusions") (Dkt. No. 98) (failing to mention standing).)  In fact, at trial, Defendants declined to provide an opening statement, apparently in order to prevent Plaintiff from previewing its standing argument.  (*See* Tr. 5:18–20.)  Defendants have not provided any cogent explanation for their failure to raise this argument in the nearly five years that this Case has been before the Court, and it is therefore waived.  *See Focus Prods. Grp. Int'l, LLC*, 2021 WL 1946756, at *2–3 (S.D.N.Y. May 14, 2021) (rejecting the defendants' standing defense where the defendants "first raised [the standing issue] on the brink of trial," and holding that "[t]his persistent and unexcused lapse works a forfeiture of [the standing defense].")

Third, the Court concludes that even evaluating Defendants' standing argument on the merits, it would find in favor of Plaintiff.  "A plaintiff establishes Article III standing by demonstrating (1) an 'injury in fact' that is (2) fairly traceable to the challenged action of the defendant and is (3) likely to be redressed by a favorable decision."  *See Barrows*, 24 F.4th at 127.  Here, Defendants' argument goes to the "injury in fact" requirement.  (*See* Defs. Opp. 1 ("Specifically, Plaintiff cannot establish . . . that it sustained an injury-in-fact[.]").)

As discussed, there appears to be no dispute that it was Plaintiff that entered into the legally binding agreements with Regency.  (*Compare* Campbell Aff. ¶¶ 18, 30, 43, 59, 74, 83, 96, 109, 122, 135; Tara Kelly Dep. 7:9–10 (stating that she "book[ed] radio through Townsquare," not a different entity); 17:18–23 (Q: "And your role at [Regency], what was your involvement with Townsquare *Media*?" A:"To place advertising." Q: "What type of advertising did you place with them?" A: "Radio and digital at different periods."), *with* DX (failing to

introduce any countervailing evidence).)  Ordinarily, a party to a contract would have standing to bring suit in the event that the contract was breached.  *See Marsh & McLennan Agency LLC v. Williams*, No. 22-CV-8920, 2025 WL 1265817, at *6 (S.D.N.Y. Apr. 30, 2025) ("Invading a legally protected interest by breaching the terms of a contract is an injury-in-fact for purposes of standing." (quoting *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405, 2013 WL 12224042, at *7 (S.D.N.Y. July 12, 2013)).  Thus, while there does appear to be some dispute as to whether Plaintiff (or some other legal entity) performed under the contracts (*see* Defs. Opp. 20), this argument does not change the fact that Defendants' legal duties run to the party with whom Defendants contracted, rather than a party that allegedly performed on behalf of Plaintiff, *see Armor Bay Constr. Corp. v. Richmond Constr. Inc.*, 208 N.Y.S.3d 483 (Sup. Ct. 2024) ("A subcontractor hired by a general contractor . . . is in privity with that entity, but not in privity with the landowner, even if the landowner benefitted from the subcontractor's work.").

Moreover, the trial record does not establish that third parties, rather than Plaintiff, performed under the contracts.  In fact, the evidence establishes just the opposite.  Campbell, who served as the manager for the Regency account during the period in which it was a customer of Townsquare, credibly testified that as to the broadcast agreements, Townsquare "provid[ed] the airtime for Regency's radio/broadcast advertisements" (*see, e.g.,* Campbell Aff. ¶ 21); and as to the digital agreements, Townsquare performed activities such as "displaying Regency's digital advertisements on Townsquare's landing pages, formatting the advertising files and seeking and obtaining any requested approvals, and allocating the budget as appropriate," (*see, e.g.*, Campbell Aff. ¶ 46).  Furthermore, the trial record included an email exchange between a Regency and Townsquare regarding Townsquare's digital advertising *performance* during the periods between January to March 2021, October to December 2020, December 2019 to

February 2020, and January to March 2019.  (*See* PX 13 at 5 (referring to "your [i.e.,

Townsquare's] performance" over the period in question).)  This evidence conclusively

establishes that it was Plaintiff, rather than another entity, that performed under the contract.

      As to the question of whether Plaintiff gave away (i.e., assigned) its rights under the

contracts to a separate legal entity: "[u]nder New York law, . . . 'although no particular formula

is needed to create an assignment . . . there is a need for some act or words that manifest an intent

to assign.'"  *Lowry v. OppenheimerFunds, Inc*., No. 20-CV-2288, 2022 WL 976823, at \*5

(S.D.N.Y. Mar. 31, 2022) (quoting *Prop. Asset Mgmt., Inc. v. Chicago Title Ins. Co.*, 173 F.3d

84, 87 (2d Cir. 1999)).  The record is devoid of any direct evidence that Plaintiff assigned its

rights under the contract to another entity.  (*See generally* PX; DX; Tr.)

      In support of their argument that there was an assignment, Defendants point to the fact

that each of the invoices in the record contains a logo that is distinct from Plaintiff's logo.  (*See,

e.g.,* Defs. Opp. 20–21).  Defendants claim that this suggests that an entity other than Plaintiff

was seeking to collect the damages owed to Plaintiff, and that therefore the Court must conclude

that Plaintiff assigned away its right to collect under the contracts.  (*See id.*)

      But as discussed above, the Court credits the testimony by Plaintiff's witnesses that each

invoice was generated and sent by Townsquare itself.  (*See* Campbell Decl. ¶¶ 22, 26, 35, 39, 48,

52, 64, 70, 76, 79, 84, 92, 97, 105, 110, 118, 123, 131, 137; Worshek Decl. ¶¶ 12, 16, 19, 22, 25,

31, 34, 37, 42, 50, 53, 61, 64, 72, 75, 83, 86, 89, 92, 93.)  And at trial, this testimony went

uncontroverted on cross-examination.  (*See generally* Tr.)  That Plaintiff was the entity that sent

the invoices suggests that Plaintiff—rather than some other organization—expected payment in

return, and thereby undermines Defendants' assignment theory.  Further bolstering this

conclusion is the fact that each invoice describes itself as a "Townsquare Media invoice."  (*See*

*e.g.,* PX 18 at 2–4; PX 30 at 2 (Dkt. No. 99-34).)  Moreover, when Regency failed to pay some of its invoices, Regency contacted *Plaintiff*, rather than some other entity, regarding its failure to pay.  (*See* Campbell Decl. ¶¶ 143–144 (citing PX 67 at 2–5 (Dkt. No. 99-71)).)  Therefore, looking to the evidence as a whole, the Court concludes that it is more likely than not that Plaintiff did not cede its right to recover under the contracts, and therefore has standing to bring this suit.

For all of the reasons discussed above, the Court concludes that Defendants' standing defense is either (1) inapposite, (2) waived or (3) lacking substantiation on the merits. Accordingly, Regency's standing defense is dismissed.  The Court now turns to the merits of Plaintiff's case.

> 2. <u>Liability as to the January 2021 Broadcast, March 2021 Broadcast, and February 2021 Digital Agreements</u>

As this Court held previously, "[i]n a breach of contract case, a plaintiff must [prove] '(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach.'"  *Townsquare Media, Inc.*, 2022 WL 4538954, at *6 (quoting *Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 464 (S.D.N.Y. 2013)), *on reconsideration in part*, No. 21-CV-4695, 2023 WL 6289984 (S.D.N.Y. Sept. 27, 2023).

As to the question of formation, a binding contract is formed where there is "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."  *Shih v. Broadway League*, No. 23-CV-8035, 2024 WL 4719586, at *7 (S.D.N.Y. Nov. 8, 2024) (quoting *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007)).  Such a manifestation can occur via email.

31

*See Townsquare Media, Inc*., 2022 WL 4538954, at *6 ("[I]t is well established in New York

that an email exchange may create an enforceable contract.'" (quoting *Meltzer, Lippe, Goldstein*

*& Breitstone, LLP v. Malfetti*, No. 16-CV-1637, 2018 WL 4627667, at *9 (E.D.N.Y. Sept. 27,

2018) (collecting cases), *aff'd*, 777 F. App'x 571 (2d Cir. 2019))).

Here, the Court concludes that Plaintiff and Regency's email exchanges formed legally

binding agreements for the January 2021 Broadcast, March 2021 Broadcast, and February 2021

Digital Agreements.  For both the January and March 2021 Broadcast Agreements, Plaintiff sent

Regency a purchase order for approval, and Regency responded, approving the purchase order.

(*See* PX 2 at 4–5; PX 7 at 4–5.)  These communications constitute objective manifestations of

mutual assent.  *See Townsquare Media, Inc*, 2022 WL 4538954, at *12 (concluding agreements

were binding under identical circumstances); *cf. Antifun Ltd. T/A Premium Vape v. Wayne Indus.*

*LLC*, 616 F. Supp. 3d 291, 305 (S.D.N.Y. 2022) (concluding that the facts were "more than

sufficient to plead the parties' objective manifestation of mutual assent" where defendant

contacted the plaintiff offering them a particular product, and defendant responded: "yes please

I'll take them" (alteration omitted)).  For the February 2021 Digital Agreement, Regency sent

Townsquare a digital budget, (*see* PX 12), which is precisely how Kelly described the formation

of the digital contracts, (*see* Kelly Dep. 21:21–22:2 (noting that  the "process of how the [digital]

purchases were executed" only involved the presentation of a budget by Defendant and "post[-

]mortem" approval.)  This exchange is identical to the other communications which the Court

previously concluded were sufficient to demonstrate a manifestation of mutual assent.  *See*

*Townsquare Media, Inc*, 2022 WL 4538954, at *11–12 (concluding that it would be

"incredulous" to read precisely the same interactions as "anything less than a clear intent to be

bound to a contract" particularly "when read in context of [the Parties'] aligned vision as to how

advertising contracts were rendered"). Thus, the Court concludes that the January 2021 Broadcast, March 2021 Broadcast, and February 2021 Digital Agreements constituted legally binding agreements.

The Court next turns to performance. As noted above, the Court credits Campbell's affidavit attesting that Townsquare fully performed under its obligations for each of these contracts. (*See* Campbell Aff. ¶¶ 21, 34, 46.) Defendants do not appear to dispute that they received the benefit of the bargain. (*See generally* Defs. Opp.) Further, it is undisputed that Regency required affidavits of performance for each month's broadcast agreement. (*See* Kelly Dep. 104:23–24.) And, as noted above, Regency emailed Plaintiff regarding Plaintiff's digital advertising performance over the course of a number of months, indicating that Plaintiff performed under the contract. (*See* PX 13 at 4–5 (providing Plaintiff's performance metrics for digital advertising between January 2021 and March 2021, October 2020 and December 2020, December 2019 and February 2020, and January 2019 and March 2019).) Moreover, the fact that Regency did not contemporaneously dispute Plaintiff's performance under the agreement further demonstrates that Plaintiff performed adequately. (*See* Campbell Aff. ¶ 143.)

Additionally, the testimony of Plaintiff's witnesses, as well as Defendants' own Aging Report, demonstrates that Regency failed to pay the invoiced amounts under each contract. (*See* Campbell Aff. ¶¶ 27–28, 40–41, 53–54; Worshek Aff. ¶¶ 17, 23, 90; Aging Report 2 (cataloging each of the outstanding invoices).) Regency's failure to uphold its contractual obligations (i.e., payment) constitutes breach. *See Syracuse Mountains Corp. v. Bolivarian Republic of Venezuela*, No. 21-CV-2678, 2023 WL 5051913, at *3 (S.D.N.Y. July 5, 2023) ("[The] [d]efendant's failure to make payments required by the [contractual] terms constitutes a breach of contract."); *Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc.*, 248 F. Supp. 3d

397, 400–01 (E.D.N.Y. 2017) ("[The] [d]efendant's failure to tender payment [] constitutes a breach of contract.").

For those reasons, the Court finds that Regency (1) was liable under the January 2021 Broadcast Agreement, March 2021 Broadcast Agreement, and February 2021 Digital Agreement; and (2) breached those contracts by failing to pay the invoiced amounts under each agreement.[7]

### 3.   Damages as to All Contracts in Issue

The Court next turns to the question of damages under each Agreement at issue at trial. "Under New York law, damages for breach of contract should put the plaintiff in the same economic position [it] would have occupied had the breaching party performed the contract." *Galderma Lab'ys, L.P. v. Cherian*, No. 19-CV-4560, 2020 WL 9813021, at *5 (E.D.N.Y. Aug. 5, 2020) (quoting *LG Capital Funding, LLC v. Solar Energy Initiatives, Inc*., No. 19-CV-907, 2019 WL 7630792, at *3 (E.D.N.Y. Nov. 1, 2019)).   "Proof of damages is an essential element of a claim for breach of contract under New York law."  *See Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016) (citing *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996)).   "With respect to proving such damages, it is well established under New York law that, while a plaintiff must prove the existence of damages with certainty in order to recover for breach of contract, plaintiff need not prove the amount of loss with certainty." *Townsquare Media, Inc*., 2022 WL 4538954, at *14 (quoting *V.S. Int'l, S.A. v. Boyden World Corp.*, No. 90-CV-4091, 1993 WL 59399, at *6 (S.D.N.Y. Mar. 4, 1993) (quotation marks

---

[7] Because the Court finds Regency liable under a breach of contract theory, it need not address Plaintiff's account stated claims.  *See Chuzhou Jincheng Metal Work Co. v. AT-SAF Inc.*, No. 20-CV-745, 2020 WL 13581669, at *8 (E.D.N.Y. Aug. 20, 2020) ("This [c]ourt has already recommended that plaintiff recover under a theory of breach of contract, . . . and, as a result, this [c]ourt need not reach the question of whether its allegations also establish liability for an account stated.").

omitted)).  To establish damages, Plaintiff is required to show "a 'stable foundation for a reasonable estimate' of the damages incurred as a result of the breach." *Process Am*., 839 F.3d at 141 (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 383 (1974)).  "At that point, the burden of any uncertainty as to the amount of damages is on the breaching party." *See id.* (citing *Boyce v. Soundview Tech. Grp., Inc.*, 464 F.3d 376, 392 (2d Cir. 2006)).

As discussed above, at summary judgment, the Court declined to rule on the issue of damages as to seven contracts for which it found liability, because Plaintiff had failed to explain substantial discrepancies between the advertising budgets for each month and the amount of damages requested.  *See Townsquare Media, Inc*., 2022 WL 4538954, at *14–17.  At trial, Plaintiff provided sworn testimony explaining how each of these discrepancies was in fact the product of partial payments and/or promotional campaigns applied to the invoices.  (*See* Campbell Aff. ¶¶ 60–140; Worshek Aff. ¶¶ 25–85, 92–96.)  Similarly, Plaintiff provided sworn testimony substantiating claimed damages for the three contracts for which the Court did not find liability at summary judgment.  (*See* Campbell Aff. ¶¶ 23–28, 36–41, 48–54; Worshek Aff. ¶¶ 12–17, 19–23, 86–90.)  This testimony is substantiated by contemporaneously generated invoices and by Defendants' own records (i.e., Defendants' Aging Report), which capture precisely the same outstanding payments.  (*See* Aging Report 2; *see, e.g.,* PX 17.)  The Court is satisfied that this evidence demonstrates Plaintiff's claimed damages to a reasonable certainty. *See Stenn Assets UK Ltd. v. Dackers Trading LLC*, No. 22-CV-7131, 2024 WL 1051136, at *5 (E.D.N.Y. Jan. 8, 2024) (concluding that damages had been adequately proven where the plaintiff provided unpaid invoices and affidavits attesting that the invoices remained unpaid); *First Bank & Tr. v. Coventina Constr. Corp.*, No. 18-CV-6648, 2019 WL 4120363, at *7 (E.D.N.Y. July 23, 2019) (holding that damages sought were supported where the plaintiff

provided copies of unpaid invoices, the defendants' emails approving those invoices, and an

"affidavit attesting that those invoices [were] unpaid."), *report and recommendation adopted*,

No. 18-CV-6648, 2019 WL 4089393 (E.D.N.Y. Aug. 26, 2019); *Glob. Drilling Suppliers, Inc. v.*

*Pier Tech, Inc.*, No. 13-CV-1106, 2018 WL 3599215, at *4 (E.D.N.Y. June 27, 2018)

(concluding that damages sought were supported where plaintiff provided copies of the invoices,

statements summarizing the invoices and payments received, and a supplemental

affidavit), *report and recommendation adopted*, No. 13-CV-1106, 2018 WL 3597503 (E.D.N.Y.

July 25, 2018).

Therefore, the Court concludes that Plaintiff has submitted sufficient evidence of the

following damages resulting from Regency's breach:

- January 2021 Broadcast Agreement: $21,250.00.  (*See* Campbell Aff. ¶¶ 27–28;

  Worshek Aff. ¶¶ 13–17; PX 4 at 2; PX 5 at 2; Aging Report 2.)

- March 2021 Broadcast Agreement: $25,500.00.  (*See* Campbell Aff. ¶¶ 40–41;

  Worshek Aff. ¶¶ 20–23; PX 10 at 2; PX 11 at 2; Aging Report 2.)

- April 2021 Broadcast Agreement: $24,225.00.  (*See* Campbell Aff. ¶¶ 61–62, 64–

  71; Worshek Aff. ¶¶ 25–32; PX 17 at 2; PX 18 at 2; PX 19 at 2; PX 20 at 2;

  Aging Report 2.)

- May 2021 Broadcast Agreement: $6,800.00.  (*See* Campbell Aff. ¶¶ 74–78;

  Worshek Aff. ¶¶ 34–40; PX 22 at 2; PX 23 at 2; Aging Report 2.)

- December 2019 Digital Agreement: $110,900.00.  (*See* Campbell Aff. ¶¶ 84–94,;

  Worshek Aff. ¶¶ 42–51; PX 25 at 2; PX 28 at 2; PX 34 at 2; PX 37 at 2; PX 40 at

  2; Aging Report 2.)

- January 2020 Digital Agreement: $141,500.00.  (*See* Campbell Aff. ¶¶ 96–107; Worshek Aff. ¶¶ 53–73; PX 45 at 2; PX 46 at 2; PX 47 at 2; PX 48 at 2; Aging Report 2.)

- February 2020 Digital Agreement: $155,000.00.  (*See* Campbell Aff. ¶¶ 109–119; Worshek Aff. ¶¶ 64–73; PX 52 at 2; PX 53 at 2; PX 54 at 2; PX 55 at 2; PX 57 at 2; Aging Report 2.)

- March 2020 Digital Agreement: $152,170.00.  (*See* Campbell Aff. ¶¶ 123–133; Worshek Aff. ¶¶ 75–84; PX 59 at 2; PX 60 at 2; PX 61 at 2; PX 62 at 2; PX 63 at 2; PX 64 at 2; Aging Report.)

- February 2021 Digital Agreement: $36,802.00.  (*See* Campbell Aff. ¶¶ 48–55; Worshek Aff. ¶¶ 87–90; PX 14 at 2 (Dkt. No. 99-18); PX 15 at 2 (Dkt. No. 99-19); Aging Report 2.)

- May 2021 Digital Agreement: $20,181.00.  (*See* Campbell Aff. ¶¶ 135–139; Worshek Aff. ¶¶ 92, 94; PX 66 at 2; Aging Report 2.)

Moreover, Plaintiff may recover pre-judgment interest.  "[I]n an action at law for breach of contract under New York law, prejudgment interest is recoverable as of right." *500 W. 43rd St. Realty, LLC v. Thukral*, No. 23-CV-9510, 2025 WL 315375, at *10 (S.D.N.Y. Jan. 28, 2025) (quoting *TNR Logistics Co. v. Status Logistics Corp.*, No. 17-CV-4636, 2018 WL 4062633, at *4 (E.D.N.Y. Aug. 27, 2018) (internal quotation marks omitted)).  "In New York breach of contract cases, the prejudgment interest rate is a simple interest rate of nine percent." *Walden Macht & Haran LLP v. Herrera Velutini*, No. 24-CV-231, 2024 WL 3797237, at *2 n.3 (S.D.N.Y. Aug. 13, 2024) (citing N.Y. CPLR § 5004)).  Therefore, the Court also awards the nine percent

prejudgment interest rate.  To the extent Plaintiff also moves for an award of costs, it will be

granted additional time to provide briefing as to that issue.

V.  <u>Conclusion</u>

For the reasons set forth above, the Court finds in favor of Plaintiff as against Defendant

Regency Management, and in favor of Defendant Regency Furniture as against Plaintiff.  Within

two weeks from the date of this order, Plaintiff is directed to submit a proposed judgment that

outlines the damages per contract, and any costs it seeks to recover.

SO ORDERED.

Dated:    November 12, 2025
        White Plains, New York

_____
    KENNETH M. KARAS
    United States District Judge